894 F.2d 844
 1990-1 Trade Cases 68,912
 Roger PECK, Carolyn B. Peck and Robert W. Peck, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION, General Motors Acceptance
Corporation; Buff Whelan Chevrolet, Inc.; Ed Rinke
Chevrolet, Inc.; Lou LaRiche Chevrolet, Inc.;
Matthews-Hargreaves Chevrolet Co.; Joe Panian Chevrolet,
Inc.; Marty Feldman Chevrolet, Inc.; Mike Savoie
Chevrolet, Inc.; and Hamilton Chevrolet, Inc., Defendants-Appellees.
 No. 88-2151.
 United States Court of Appeals, Sixth Circuit.
 Argued Oct. 11, 1989.
Decided Jan. 30, 1990.
 
 Alan L. Kaufman (argued), Bello & Kaufman, Southfield, Mich., for plaintiffs-appellants.
 Robert G. Cutler (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., Robert Y. Weller, II, Lawrence F. Raniszeski, John P. Hartwig, Colombo & Colombo, Birmingham, Mich., Michael L. Updike, Bruce Truex, Koehl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, Mich., Arthur J. Rose, III, Warren, Mich., for defendants-appellees.
 Before JONES and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Roger, Carolyn and Robert Peck, appeal the district court's order dismissing their antitrust claim for lack of standing and as time-barred pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons which follow, we affirm.
 
 I.
 
 2
 Pursuant to Rule 12(b)(6), Fed.R.Civ.P., we accept the facts as stated in the Pecks' complaint. Roger Peck previously was the sole owner and president of Roger Peck Chevrolet, Inc., a car dealership located in Farmington Hills, Michigan. Robert W. Peck is the previous vice-president of the dealership. Carolyn B. Peck was the owner of C & R Agency, a Michigan corporation whose sole business was to sell credit life insurance to customers of Roger Peck Chevrolet. Roger Peck Chevrolet was discharged in bankruptcy in 1986. The Pecks contend that the dealership's bankruptcy was caused by the defendant-appellees' violations of the Sherman, Clayton and Robinson-Patman Acts. The Pecks commenced this action against the General Motors Corporation (GMC), General Motors Acceptance Corporation (GMAC), and several area Chevrolet dealerships in the United States District Court for the Eastern District of Michigan on June 20, 1988. The plaintiffs alleged violations of federal antitrust laws as well as pendant state claims. The gravamen of the Pecks' antitrust allegations against GMC is as follows:
 
 
 3
 In the course and conduct of its business, beginning in 1979 and continuing until 1986, General Motors Corporation has agreed, conspired and combined and otherwise acted in concert with third persons, including but not limited to those corporations named in this Complaint, to effectuate a policy the purpose and effect of which was to restrain trade, limit competition, to discriminate against Roger Peck and in favor of several of the other named defendants (Chevrolet dealerships) with regard to the wholesale price paid by Roger Peck Chevrolet, Inc., for the vehicles purchased from defendant General Motors Corporation, and to limit improperly the amount, timing and manner in which it distributed or sold vehicles to Roger Peck Chevrolet, Inc.
 
 
 4
 J.App. at 8-9.
 
 
 5
 The complaint similarly charges GMAC with conspiratorial acts in violation of antitrust laws.[1] The Pecks seek actual and future damages incurred as a result of GMC and GMAC's antitrust misconduct. The district court determined that the Pecks lacked standing to bring a private antitrust action under Sec. 4 of the Clayton Act, 15 U.S.C.A. Sec. 15(a) (1973). The court further found that the suit was time-barred under the applicable four-year statute of limitations. Accordingly, it dismissed the Pecks' complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 II.
 
 6
 Our review of a district court's dismissal of a complaint under Rule 12(b)(6) is de novo. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Construing the complaint's allegations in a light most favorable to the pleader, we do not dismiss a complaint under the rule unless it appears beyond doubt that the plaintiff could not prove a combination of facts in support of his claim that would entitle him to relief. See id.
 
 
 7
 Section 4 of the Clayton Act grants a treble-damages remedy to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C.A. Sec. 15(a). Although broad on its face, the class of persons afforded a remedy by the statute has been limited by the Supreme Court's decisions in Blue Shield of Virginia v. McCready, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), and Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Those decisions prescribe a number of factors to be balanced in determining whether a person has standing under Sec. 4. In Southhaven Land Co., Inc. v. Malone & Hyde, Inc., 715 F.2d 1079 (6th Cir.1983), this court gleaned from Associated General Contractors the considerations to be weighed in determining antitrust standing and formulated a balancing test to be employed in the Sixth Circuit. The factors to be considered are:
 
 
 8
 1) the causal connection between the antitrust violation and the harm to the plaintiff and whether that harm was intended to be caused;
 
 
 9
 2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market;
 
 
 10
 3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative;
 
 
 11
 4) the potential for duplicative recovery or complex apportionment of damages; and
 
 
 12
 5) the existence of more direct victims of the alleged antitrust violation.
 
 
 13
 Id. at 1085. We analyze the Pecks' claim of standing to sue using the above framework. No one factor will be conclusive. Province v. Cleveland Publishing Co., 787 F.2d 1047, 1051 (6th Cir.1986).
 
 
 14
 A. Intent to Cause Harm and the Causal Connection Between
 
 
 15
 the Antitrust Infraction and Alleged Injury
 
 
 16
 The Pecks maintain that their complaint alleges an intentional antitrust conspiracy directed against them individually. GMC and GMAC, on the other hand, argue that any antitrust conspiracy that was perpetrated was directed at Roger Peck Chevrolet as a corporate entity, making the Pecks' injuries incidental to the alleged misconduct. In Fallis v. Pendleton Woolen Mills, Inc., 866 F.2d 209 (6th Cir.1989), a terminated employee brought an antitrust action against his employer, alleging that the employer's vertical price fixing scheme injured him by reducing his sales commissions. This court held that the employer's scheme was intended to harm retailers to whom the employer sold and to raise consumer prices. Id. at 210-11. The plaintiff's reduction in sales commissions was merely a derivative effect of the price fixing scheme. Id. As such, the employee's injury was insufficient to accord him antitrust standing.
 
 
 17
 The Pecks attempt to distinguish Fallis by merely reasserting that they, individually, not Roger Peck Chevrolet as a corporate entity, were the targets of GMC and GMAC's antitrust violations. However, the specific misconduct as well as the damages alleged in the Pecks' complaint belie this contention. For instance, the complaint alleges that GMAC charged interest to Roger Peck Chevrolet for vehicles not in its possession (Complaint p 24); that Roger Peck Chevrolet was refused access to GMC plants (Complaint p 25(b)(6)); and that Roger Peck Chevrolet was deprived of hundreds of thousands of dollars in gross commissions (Complaint p 25(b)(7)). J.App. at 4. A fair reading of the Pecks' complaint clearly reveals that Roger Peck Chevrolet is the target of the alleged antitrust conspiracy. The Pecks' loss of employment income, benefit incentives and personal investments place them in no better position to assert standing than the employee in Fallis who suffered reduced sales commissions. Accordingly, the Pecks' damages are derivative and militate against granting them antitrust standing. See 866 F.2d at 210-11. See also Province, 787 F.2d 1047 (no antitrust standing to newspaper employees who alleged that they lost their jobs because of a conspiracy between their employer and a surviving paper where employees could not show an intent to harm them and where the causal link between conspiracy and loss of employment was attenuated). While the Pecks attempt to claim the corporate entity's damages as their own by substituting their individual names in lieu of Roger Peck Chevrolet at various points in their complaint, this cosmetic approach does not blur the distinction between those damages incurred directly by the corporate entity and those incurred incidentally by the corporation's employees and shareholders. See Meyer Goldberg, Inc. of Lorain v. Goldberg, 717 F.2d 290, 294 (6th Cir.1983) (sole shareholder of bankrupt corporation not allowed antitrust standing where shareholder's complaint failed to state any injury different in kind or magnitude from the corporation's injury).
 
 
 18
 B. The Pecks' Status as Consumers or Competitors in the
 
 Relevant Market
 
 19
 The Pecks do not claim that they, as individuals, are competitors or consumers in the market for purchasing and selling GMC vehicles. Rather, they claim that their injuries are "inextricably intertwined" with the injuries sustained by Roger Peck Chevrolet. To succeed on this theory, the Pecks must show that GMC and GMAC used them as "a fulcrum, conduit or market force to injure competitors or participants in the relevant product or geographical markets." Southaven, 715 F.2d at 1086. The Pecks rely on McCready, 457 U.S. 465, 102 S.Ct. 2540, to meet this test. In McCready, the Supreme Court held that although the plaintiff, a purchaser of psychotherapy services, was not a competitor of the alleged conspirators, she nevertheless had antitrust standing because her injury was integrally connected to the harm the conspirators sought to inflict. Id. at 483-84, 102 S.Ct. at 2550. However, in McCready, the plaintiff was actively manipulated by conspirators because she was forced to choose between employing the services of psychologists, the targets of the conspiracy and thereby forfeiting insurance reimbursements, or selecting the services of the conspirators, psychiatrists, and thereby being restricted in her selection of psychotherapy services. Id. at 483, 102 S.Ct. at 2550. The Pecks do not demonstrate any analogous manipulation by GMC or GMAC. Therefore, because the Pecks as individuals are neither consumers nor competitors in the GMC car market, they have not established that they have standing.
 
 
 20
 C. The Directness or Indirectness of the Injury and the
 
 Speculative Nature of the Damages
 
 21
 The Pecks' basic argument regarding this prong of the balancing test is that their damages are so specific as to be identified with numerical values. GMC and GMAC correctly note that this argument misses the point. This court held in Meyer Goldberg, 717 F.2d 290, that although a sole shareholder suffered reduction in stock value as a result of antitrust infractions against his corporation, his injury was a derivative consequence of the injury to the corporation and, as such, was indirect. Id. at 294. Similarly, the Pecks' claimed damages of lost investments, profits and future income are derivative of the injury to Roger Peck Chevrolet and do not support their claim to antitrust standing. See id. The plaintiffs have cited John Peterson Motors, Inc. v. General Motors Corp., 613 F.Supp. 887 (D.Minn.1985), and Stepp v. Ford Motor Credit Co., 623 F.Supp. 583 (W.D.Wis.1985), in support of their argument that they stand in the shoes of their dealership for purposes of analyzing the directness of their injury. The John Peterson case is of particular interest because there, as in this case, it was argued that the corporation's bankruptcy left only the individual plaintiff with the "incentive to sue to restore competition in the relevant market." John Peterson, 613 F.Supp. at 902. John Peterson differs from the Pecks' case in one crucial respect, though. In this case, unlike John Peterson, the corporation previously released the principal defendant (GMC) from any and all potential liability. J.App. at 51-52. The John Peterson court based antitrust standing on the "unity of interest and ownership" between the corporation and its individual owner, a concept applicable in the context of closely held corporations. See John Peterson, 613 F.Supp. at 902; see also Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1340 (7th Cir.1989) (Ripple, J., concurring). As a result, the car dealership's owner in John Peterson was able to step into the corporation's shoes and therefore obtain standing to assert the corporation's antitrust claims. See John Peterson, 613 F.Supp. at 901-02. In contrast, the antitrust claims that the Pecks could inherit by stepping into their dealership's shoes have already been released. Were we to follow the reasoning of John Peterson, recognition of the Pecks' "unity of interest and ownership" merely affords them standing to assert claims that have already been redressed through an exchange of consideration by GMC. Thus, even if the Pecks are entitled to assume their corporation's antitrust claims, their corporation's release of its claims against General Motors effectuated by the Chapter 7 trustee prevents them from individually pursuing relief for the alleged antitrust violations.
 
 
 22
 D. Potential for Duplicative Recovery or Complex
 
 Apportionment of Damages
 
 23
 The Pecks contend that there is no risk of duplicative recovery because Roger Peck Chevrolet no longer exists and therefore cannot sue for the alleged antitrust infractions committed against it. Thus, they maintain they are the only potential litigants with any claim to antitrust standing in this matter. Although Roger Peck Chevrolet was closed and discharged in bankruptcy in March of 1986, its trustee in bankruptcy may apply to the bankruptcy court to reopen the company's case upon the discovery of new assets, assuming the Chapter 7 trustee has not released GMC from any and all potential liability. See Scharmer v. Carrollton Mfg. Co., 525 F.2d 95, 98 (6th Cir.1975). Hence, the availability to Roger Peck Chevrolet of standing to sue raises the specter of duplicative recovery.
 
 
 24
 E. The Existence of More Direct Victims of the Alleged
 
 Antitrust Violation
 
 25
 The Pecks' arguments under this prong of the balancing test replicate those asserted under the direct/indirect injury inquiry. In Meyer Goldberg, we denied antitrust standing to the sole shareholder of a corporation where the corporation itself was a more direct victim of the alleged antitrust violations. 717 F.2d at 294. The same result is dictated by the facts of the instant case.
 
 
 26
 Having balanced the factors prescribed by Southaven, 715 F.2d 1079, we conclude that the Pecks lack standing under Sec. 4 of the Clayton Act and affirm the district court's dismissal of their complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 III.
 
 27
 The Pecks also challenge the district court's dismissal of their complaint as time-barred. Section 4B of the Clayton Act, 15 U.S.C.A. Sec. 15b (1973), allots four years from the date of accrual in which to bring an antitrust suit. A cause of action accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff's business. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). The Pecks contend that the action is not time-barred because they felt the adverse impact of GMC and GMAC's conspiracy as recently as 1988. However, the fact that the Pecks' injuries have a rippling effect into the future only establishes that they might have been entitled to future damages if they had brought suit within four years of the commission of the last antitrust violation. Id. at 339, 91 S.Ct. at 806. The plaintiffs' characterization of the defendants' conduct as a continuing violation is one we reject. Since the Supreme Court decided Zenith, federal courts have uniformly defined a "continuing [antitrust] violation [as] one in which the plaintiff's interests are repeatedly invaded[.]" Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237 (9th Cir.1987). This circuit has refined the Zenith standard to the point that it now can be expressed as two discrete rules. First, "[w]hen a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." Barnosky Oils, Inc. v. Union Oil Co. of California, 665 F.2d 74, 81 (6th Cir.1981). Second, "in the context of a continuing conspiracy, the statute of limitations runs from the commission of the act that causes the plaintiff's damage." Chiropractic Coop. Ass'n of Michigan v. American Medical Ass'n, 867 F.2d 270, 275 (6th Cir.1989). Thus, "even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act." Pace, 813 F.2d at 237. For statute of limitations purposes, therefore, the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts. Cf. Barnosky, 665 F.2d at 81 (" '[P]laintiffs may sue only for damages that result from acts committed by the defendants within four years preceding commencement of suit.' ") (citation omitted).
 
 
 28
 The plaintiffs' argument on the statute of limitations issue suggests a fundamental misapprehension of the governing standards that this court derived from Zenith in the Barnosky and Chiropractic Coop. cases. The plaintiffs contend that "[t]he two most dramatic dates in the instant case are the dates upon which the Pecks lost their jobs and the capacity to sell credit life insurance (July of 1984) and the date that Roger Peck was deprived of his franchise (December 1, 1984)." Appellants' Brief at 43. While those events unquestionably occurred within the four-year limitation period, they are not "act[s] that cause[d] the plaintiff[s'] damage." See Chiropractic Coop., 867 F.2d at 275. Because "the statute [of limitations] runs from the last overt act[,]" Pace, 813 F.2d at 237; see also Chiropractic Coop., 867 F.2d at 275, the timing of the plaintiffs' loss of employment is irrelevant insofar as the statute of limitations is concerned. The complaint includes no specific allegation of any overt act committed on or after June 20, 1984; the complaint simply refers to acts "[b]eginning in the late 1970's or early 1980," and "policies enacted during the entire period of the 1980's[.]" Moreover, the plaintiffs have steadfastly adhered to their contention that their injuries occurred within the limitations period, but have made no serious contention that the overt acts causing their injuries occurred after June 20, 1984. Because the timing of the defendants' overt acts, not the timing of the plaintiffs' injuries, controls the statute of limitations issue, the plaintiffs' antitrust claims are time-barred.
 
 IV.
 
 29
 For the foregoing reasons, we AFFIRM the district court's dismissal of the Pecks' antitrust action.
 
 
 
 [1]
 On appeal, Hamilton Chevrolet, Buff Whelan Chevrolet, Ed Rinta Chevrolet, Lou LaRiche Chevrolet, Matthews-Hargreaves Chevrolet, Joe Panian Chevrolet, Marty Feldman Chevrolet, and Mike Savoie Chevrolet have joined in the brief of GMC and GMAC. Because the Pecks' complaint and appellate brief focus on the alleged misconduct of GMC and GMAC, we make exclusive reference to these two defendants-appellees in our ensuing discussion