**RANDOLPH COUNTY FEDERAL SAVINGS & LOAN ASSOC., et al., Plaintiffs,**

v.

**Lee F. SUTLIFFE, et al., Defendants.**

No. C–1–91–240.

United States District Court, S.D. Ohio, W.D.

Oct. 15, 1991.

John Cruze, Cincinnati, Ohio, Alan McLaughlin, Brian Burke, R. Joseph Howell, Indianapolis, Ind., for Indy.

John Latham, Atlanta, Ga., for Bass.

Larry Temin, Cincinnati, Ohio, Lawrence Wojcik, Chicago, Ill., for Clifton Firm.

Thomas Schuck, Maynard Holcomb, Jr., Brian Hurley, Cincinnati, Ohio, for Dixon.

Robert Mollhagen, Lansing, Mich., James Geary, John Allen, Lawrence Murphy, Kalamazoo, Mich., R. Gary Winters, Cincinnati, Ohio, for Dekalb.

Henry Dixon, Dixon, Ill., for Fleming.

Michael Maundrell, Robert Brown, Cincinnati, Ohio, for Goodman.

Sidney Gould, St. Louis, Mo., for Gould.

Anthony Coultas, St. Louis, Mo., for GRA.

C. David Vaughan, Atlanta, Ga., for Jackson.

James Allen Hunt, K. Roger Schoeni, Cincinnati, Ohio, for P & K.

James Adams, Grant Cowan, Elizabeth Lanier, Cincinnati, Ohio, for Price Waterhouse.

Michael Siemer, Roswell, Ga., for Siemer.

Anthony Castelli, Cincinnati, Ohio, for C. Siemer.

Robert Sheddy, Knoxville, Tenn., for Sheddy.

Robert Pitcairn, Jr., Cincinnati, Ohio, Lewis Mills, Joanne Martin, St. Louis, Mo., for Southside.

Mark Vanderlaan, Neal Baker, Cincinnati, Ohio, for Stinson Firm.

Michael Siegler, Cincinnati, Ohio, for Sutliffe.

Jim Swink, Sr., pro se.

David Cupps, Carl Smallwood, Columbus, Ohio, Daniel Buckley, Cincinnati, Ohio, for Touche.

Jerald Esrick, Elizabeth Sanders, Chicago, Ill., James Robinson, Oxford, Ohio, for Vitullo.

Edward Zumbiel, Michael Kohn, Cincinnati, Ohio, for Windler Firm.

Susan Dlott, William Hardy, Cincinnati, Ohio, for Ziercher Firm.

Ronald Parry, Covington, Ky., J. Michael Rediker, Birmingham, Ala., Stephen Immelt, Ty Cobb, Baltimore, Md., for plaintiffs.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon defendant Touche Ross' motion to dismiss the complaint (Doc. no. 24). For the reasons set forth below, defendant's motion is hereby GRANTED in part and DENIED in part.

### Procedural Background

Plaintiffs bring claims against defendants for violations of Section 10(b) and Rule 10b–5 (Count I); aiding and abetting violations of Rule 10b–5 (Count III); professional negligence (Count IV); negligence in the performance of audits (Count V); fraud (Count VII); 18 U.S.C. § 1961 (RICO) (Count VIII); and aiding and abetting breaches of fiduciary duty (Count X). Defendant contends that plaintiffs' federal securities claims, RICO claims, and state law claims under Counts 4, 5, 7 and 10 are barred by the lapse of time and that the pendent state law claims should be dismissed for want of jurisdiction.

### Standard of Review

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a) which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A Court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826 [105 S.Ct. 105, 83 L.Ed.2d 50] (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] (1957).

The admonishment to liberally construe plaintiff's claim when evaluating

a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice & Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In Re: Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984); Wright, Miller & Cooper, Federal Practice & Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit recently clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

**1.** Defendant erroneously cites *Agency Holding* in its supporting memorandum for the proposition that the statute of limitations begins to run "at the time of the injurious act rather than its discovery". The Supreme Court in *Agency Holding* expressly declined to determine the appropriate time of accrual for a RICO claim. *See Agency Holding,* 483 U.S. at 157, 107 S.Ct. at 2767.

**2.** Four circuits have held that the cause of action accrues each time the claimant discovered or should have discovered an injury caused by a RICO violation. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988); *State Farm Mutual Auto Insur. Co. v. Ammann,* 828 F.2d 4 (9th Cir.1987); *Rodriguez v. Banco Central,* 917 F.2d 664 (1st Cir.1990); *Pocahontas Supreme Coal Co. v. Bethlehem Steel,* 828 F.2d 211 (4th Cir. 1987). An equal number of circuits have concluded that a cause of action accrues at the time

*Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988); *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). In its scrutiny of the complaint, a Court construes all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### RICO Claims

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit has addressed the issue of when a RICO claim accrues and the statute of limitations begins to run.[1] However, every other Circuit which has considered this issue has concluded that the statute of limitations for a civil RICO claim begins to run at the time the plaintiff discovers either the injury resulting from the RICO violation or the pattern giving rise to the RICO claim.[2] These courts have found that the unique character of a RICO cause of action necessitates a special rule to determine when the statute of limitations begins to run. *Granite Falls,* 924 F.2d at 152. Accordingly, they have looked to the particular elements of a

plaintiff discovers or reasonably should have discovered both the existence and source of his injury and that the injury is part of a pattern of racketeering activity. *Granite Falls Bank v. Hendrikson,* 924 F.2d 150, 154 (8th Cir.1991); *Bath v. Bushkin, Gaims, Gaines & Jones,* 913 F.2d 817, 820–21 (10th Cir.1990); *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Florida, Inc.,* 906 F.2d 1546, 1553–54 (11th Cir.1990); *Keystone Insur. Co. v. Houghton,* 863 F.2d 1125, 1126 (3d Cir.1988) (holding that cause of action accrues when plaintiff knows or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity). At least one district court in the Sixth Circuit has concluded that the statute of limitations begins to run when the plaintiff knows or has reason to know of the RICO injury which is the basis of his action. *Coal–Mac, Inc. v. JKM Coal Co., Inc.,* 743 F.Supp. 499, 501 (E.D.Ky.1990).

RICO claim in order to formulate an appropriate rule.

The United States Court of Appeals for the Second Circuit has set forth the rationale for the rule that a RICO cause of action accrues at the time the claimant knew or should have known of his injury. *Bankers Trust*, 859 F.2d 1096. The Court in *Bankers Trust* reasoned that the plain language of the RICO statute requires acts that constitute a RICO violation and injury as a result of the violation, so that the claimant has no right to sue and a cause of action cannot be held to have accrued until an injury occurs. *Id.* at 1102. Because Congress tied the right to sue to the time of the injury rather than to the time of the violation, the cause of action accrues on the date plaintiff discovers or should have discovered the injury. *Id.* at 1103.[3]

Several courts have rejected the rule espoused in *Bankers Trust* and have concluded that a RICO cause of action does not accrue until the claimant discovers or reasonably should have discovered the existence and source of the injury and that the injury is part of a pattern of racketeering activity. The rationale underlying this rule is that a RICO cause of action cannot accrue until all of its elements are present. *Granite Falls*, 924 F.2d at 152; *Keystone*, 863 F.2d at 1130. Because the elements of a RICO violation include injury and a pattern of racketeering activity, a claimant cannot sue for a RICO violation until the damage to him is part of a pattern. *Keystone*, 863 F.2d at 1131; *Bath*, 913 F.2d at 820–21 (*citing Bivens Gardens*, 906 F.2d at 1554–55). Accordingly, the discovery rule must apply to the pattern element as well as to the injury element. *Keystone*, 863 F.2d at 1130. Also underlying formulation

of this rule is the concern that a limitations period running from discovery of the injury could lapse before a claimant was able to state a RICO cause of action, as in a case where a claimant sustained a single injury from a predicate act but a second predicate act establishing a pattern did not occur until five years later. *Keystone*, 863 F.2d at 1134; *Granite Falls*, 924 F.2d at 154.

Although the United States Court of Appeals for the Sixth Circuit has not expressly addressed the accrual issue in the context of a RICO claim, it has provided some indication that a discovery rule for RICO claims is warranted. In *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (1988), the Court of Appeals approved this Court's instruction to the jury that it was to determine "whether the plaintiff knew or should have known of the defendants' fraudulent scheme" more than four years prior to the filing of the RICO complaint. *Hofstetter*, 905 F.2d at 904. The Court of Appeals provided no explanation for its finding and had no occasion to discuss whether a RICO cause of action accrues at the time of discovery of the injury or of the pattern of racketeering activity. Nonetheless, the Court's finding suggests that it espouses a discovery rule for RICO causes of action.[4]

Despite the unanimous agreement on the appropriateness of a discovery rule by the Courts of Appeals which have considered the accrual question, defendant urges this Court to apply the rule of accrual which the Sixth Circuit has adopted for a claim brought under § 4 of the Clayton Act, 15 U.S.C. § 15(a), from which the period of limitations for a civil RICO claim was derived. *Peck v. General Motors Corp.*, 894 F.2d 844 (6th Cir.1990).[5] In support of its

---

**3.** The Court in Bankers Trust also found the Clayton Act to be a major source of support for a rule of separate accrual based on similarities between the Act and RICO. For reasons stated later in this opinion, this Court rejects the proposition that the same rules governing the running of the statute of limitations on Clayton Act claims apply to RICO claims.

**4.** Because the Hofstetter trial occurred before the United States Supreme Court issued its decision in Agency Holding, the trial court instructed the jury to apply the Ohio four-year statute of

limitations. However, the Court of Appeals had the benefit of the Agency Holding decision when it issued its opinion.

**5.** Under the Clayton Act, a cause of action accrues each time the claimant is injured by an act of defendants and the statute of limitations begins to run at the time the act is committed. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *Peck*, 894 F.2d at 849. In the context of a continuing violation, the statute of limitations

contention that the statute of limitations should begin to run from the time of defendant's overt act, defendant alleges only that RICO claims are patterned after Clayton Act claims. This proposition is beyond dispute. See *Agency Holding*, 483 U.S. at 152, 107 S.Ct. at 2765. However, the mere fact that the RICO statute of limitations is based on the statute of limitations for a Clayton Act claim does not warrant blind application of the same rules governing the running of the statute of limitations to both types of claims, particularly in light of the differences between the two causes of action. Because the Clayton Act, unlike RICO, does not include a pattern requirement, the accrual of a Clayton Act claim does not depend on acts subsequent to the initial wrongful act. *Granite Falls*, 924 F.2d at 153. Furthermore, in light of RICO's pattern requirement, there is a danger that absent a discovery rule, a claimant's cause of action could lapse before he reasonably should have known that he had a RICO claim. *Id.* Thus, the unique elements of a RICO claim require that the Court look beyond the Clayton Act to determine statute of limitations issues under RICO.

▇▇▇ Defendant has not advanced any arguments that would undermine the reasoning of every Court of Appeals which has considered the accrual issue and determined that a discovery rule is appropriate.[6] The Court finds the reasoning of those courts which have held that a RICO cause of action accrues and the statute of limitations begins to run when the claimant discovers the source and existence of his injury and that the injury is part of a pattern of racketeering activity to be sound for several reasons. First, a plaintiff cannot state a RICO claim until there is (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Furthermore, a plaintiff does not have

standing to sue until he has been injured by the conduct constituting the RICO violation. *Id.* Thus, a cause of action should not be held to have accrued until both an injury and a pattern of racketeering activity are present. In addition, a discovery rule that applies to both the injury and pattern elements advances the broad, remedial nature of RICO, since an injured party must have reason to know his injury is part of a pattern of racketeering activity before he can bring suit. *See Bivens Gardens*, 906 F.2d at 1555. At the same time, the rule furthers the purpose of the four-year statute of limitations by requiring plaintiff to pursue a civil RICO remedy within four years of the time he discovered or reasonably should have discovered that he is entitled to civil RICO damages for his injury. *Id.* Finally, this rule is consistent with the general rule applicable to fraud-based actions under federal law, which provides that the statute of limitations starts running when plaintiff discovers or reasonably should have discovered the underlying facts relevant to his claim. *Granite Falls*, 924 F.2d at 153. Accordingly, the statute of limitations as to each independent injury alleged by plaintiffs began to run when plaintiffs discovered or reasonably should have discovered the existence and source of the injury resulting from defendants' alleged wrongful acts and that the injury was part of a pattern of racketeering activity.

After careful review of the complaint, the Court finds that plaintiffs may be able to establish that they did not discover, and reasonably should not have discovered, their injury and that such injury was part of a pattern more than four years prior to the filing of the complaint. Thus, plaintiffs' RICO claims will not be dismissed on the ground that they are barred by the lapse of time.

*Federal Securities Fraud Claims*

▇▇▇ On June 20, 1991, the United States Supreme Court established a federal stat-

---

runs from the last overt act. *Peck,* 894 F.2d at 849.

**6.** The Sixth Circuit's decision in *Peck* in no way suggests that a discovery rule for RICO claims is inappropriate. *Peck* dealt solely with a Clayton

Act antitrust violation. The Court did not have occasion to discuss the applicability of the rules of accrual that govern Clayton Act claims to RICO violations.

ute of limitations for litigation instituted pursuant to § 10(b) and Rule 10b–5. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). An action under § 10(b) and Rule 10b–5 must be commenced within one year after discovery of the facts constituting the violation and within three years after such violation. *Id.* at 2782. The Court applied the newly-adopted period of limitations to the litigants before it without any discussion of retroactivity and held that the plaintiffs' claims were untimely. *Id.*

On the same day *Lampf* was decided, the Supreme Court issued its decision in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Justice Souter, joined by Justice Stevens, delivered the opinion of the Court. Four other justices concurred in the judgment. The issue in *Beam* was whether a decision declaring an excise tax imposed under Georgia law to be unconstitutional should apply retroactively. The Supreme Court held that " ... when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata". *Id.* at 2448. The Court reasoned that retroactivity is " ... properly seen in the first instance as a matter of choice of law, 'a choice ... between the principle of forward operation and that of relation backward'." *Id.* at 2443 (*quoting Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932)). The choice-of-law problem may be resolved in three ways. First, a decision may be made fully retroactive, applying both to the parties before the Court and to all others by or against whom claims may be pressed. Second, a decision may be made purely prospective in which event the new rule is applied to neither the parties before the court nor to others as to whom the conduct in issue occurred before announcement of the new rule. Third, a

court may apply a new rule in the case in which it is announced but decline to apply it to all other claims arising before the date of the pronouncement. *Id.,* 111 S.Ct. at 2443–2444. The Court rejected the validity of this third alternative, known as modified or selective prospectivity, *Id.* at 2446, and refused "to speculate as to the bounds or propriety of pure prospectivity". *Id.* at 2448.

In rendering the *Beam* decision, the Supreme Court declined to apply the test of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) for determining whether retroactive application of a new rule of law is warranted.[7] The Court determined that principles of equality and *stare decisis* prevail over any claim based on the *Chevron Oil* analysis when the case announcing the new rule of law has applied the law to the parties before the court. *Id.* at 2446. The Court acknowledged that rejection of modified prospectivity precluded the possible applications of the *Chevron Oil* analysis: specifically, the court cannot utilize the test to determine the choice-of-law by considering the equities of a particular case. *Id.* at 2447.

Notwithstanding the Supreme Court's pronouncements in *Beam,* plaintiffs claim that "a rule of blanket retroactivity of the federal period of limitations cannot be inferred from the *Lampf* decision". Plaintiffs point to the factional nature of the Court's decision in *Beam* and speculate as to what the various justices intended by their decisions in that case and in *Lampf.* Plaintiffs deduce that *Beam* does not undermine the validity of *Chevron Oil* in the context of statute of limitations questions but simply places a qualification on the *Chevron Oil* analysis when applied to substantive rules of law.[8] In support of their proposition, plaintiffs rely on the Supreme Court's pronouncements in *American Trucking Associations, Inc. v. Smith,* —— U.S. ——, 110 S.Ct. 2323, 110 L.Ed.2d 148

---

7. The *Chevron Oil* analysis provides for consideration of a number of factors, including whether retroactive application of a new rule of law would further or retard its operation and produce inequitable results.

8. For the limited purpose of disposing of plaintiffs' arguments, the Court will accept plaintiffs' characterization of the statute of limitations as a nonsubstantive matter.

(1990), regarding the applicability of *Chevron Oil* to statute of limitations issues. Plaintiffs also note Justice O'Connor's observation in her dissenting opinion in *Lampf* that, "After *American Trucking,* the continued vitality of *Chevron Oil* with respect to statutes of limitations is—or should be—irrefutable; nothing in [*Beam*] alters this fact". In addition, plaintiffs cite *Northwest Savings Bank PaSa v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), in which the Supreme Court vacated the Second Circuit's decision that a previously adopted one-year/three-year limitations rule for Sec. 10(b) and Rule 10b–5 claims did not apply retroactively. *See Welch v. Cadre Capital,* 923 F.2d 989, 995 (2d Cir.1991). Plaintiffs conclude in light of such authority that the *Chevron Oil* analysis remains viable and is appropriately applied to the case *sub judice.*

The Court disagrees with plaintiffs' analysis. Irrespective of whether the *Chevron Oil* analysis is valid in limited circumstances, the Court must conclude that *Beam* applies to this litigation. The Supreme Court in *Beam* did not carve out an exception for statute of limitations issues in holding that when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. Nor does the Court's reasoning allow such an exception to be implied from its opinion. Justice Souter noted that although the Supreme Court has accepted prospectivity under the *Chevron Oil* test, it has never applied the test "to the end of modified civil prospectivity". *Beam,* 111 S.Ct. at 2445. Justice Souter did not distinguish between substantive matters of law and statute of limitations issues in this context or suggest in any way that modified prospectivity remains a viable alternative with regard to the latter.

In addition, the Supreme Court's action in *Welch* belies plaintiffs' claim that *Beam* does not apply to statute of limitations issues. The lower court in *Welch* rejected retroactive application of the one-year/three-year period of limitations under a *Chevron Oil* analysis. The Supreme Court remanded the case for further considera-

tion in light of *Lampf* and *Beam*. The Supreme Court's directive to the Second Circuit to reconsider its holding in light of *Beam* is superfluous if that decision does not apply to the statute of limitations formulated in *Lampf,* particularly since the Second Circuit had applied a *Chevron* analysis to the one-year/three-year period of limitations previously adopted by that Circuit.

Finally, despite the fragmented nature of the decision in *Beam* and the fact that some justices dissented in *Lampf,* this Court is bound by a majority holding of the United Supreme Court. This Court cannot speculate as to what the justices may have intended by their opinions and ignore what they state the law to be.

Applying *Lampf* and *Beam* to the case before the Court, the only possible outcome is that the one-year/three-year statute of limitations adopted in *Lampf* applies to plaintiffs' federal securities fraud claims. Assuming the continued viability of *Chevron Oil* in limited situations, the test has no application to plaintiffs' claims. The Court in *Lampf* applied the new one-year/three-year statute of limitations to the litigants before it. Under *Beam,* the new rule must be applied to all other litigants, irrespective of the detrimental impact blanket application of the rule may have on claimants in a given case. To hold otherwise would result in modified prospective application of the new rule, a practice which the Supreme Court has rejected in no uncertain terms.

■ Plaintiffs urge that if the Court finds the one-year/three-year period of limitations governs their claims, the Court should not apply *Lampf* in a manner detrimental to them. Plaintiffs argue it is possible that Congress may override *Lampf* and enact a longer period of limitations and that other courts will issue decisions clarifying *Lampf.* Plaintiffs' suggestion that the Court delay resolution of a disputed issue based on speculation that a change in the law which may prove favorable to them will be wrought in the future is both unthinkable and unfair. It is the obligation

of this Court to timely resolve disputed legal issues "based upon [its] best current understanding of the law." *Beam,* 111 S.Ct. at 2443. If the governing law is unclear, it is the Court's function to interpret the law in light of existing authorities. This Court will not abdicate these responsibilities to other courts, which are in no better position than is this Court to ascertain and apply the governing law.

Plaintiffs further contend that if the federal period of limitations applies to their claims, such claims are not barred by the lapse of time. Plaintiffs submit that the statute of limitations for each class member's Rule 10b–5 claim began to run at the point that the class member purchased his or her First Humanics bonds. Plaintiffs thus claim that the maximum impact of *Lampf* would be to bar the claims of those class members who purchased their bonds more than three years before September 6, 1990, the date of the filing of the complaint. However, plaintiffs also contend that "Because Defendants Failed to Correct Their Misstatements, Only the Claims of Pre–December 22, 1984 Purchasers Would be Barred". Plaintiffs claim that this is so because defendants had a continuing duty to correct fraudulent omissions and acts and failed to do so: therefore, each defendant is chargeable with a "fresh misleading omission" as of September 6, 1987, three years prior to the date the complaint was filed. Finally, plaintiffs argue that their claims are not time-barred because defendants made misrepresentations within three years of the filing of the complaint in connection with the Medicos bond offering, which was conducted on and after October 15, 1987.

■ In determining when the statute of limitations begins to run for a § 10(b) and Rule 10b–5 claim, the Court must look to the elements of such claim. Sec. 10(b) provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of the mails, or of any facility of any national securities exchange,

(b) To use or employ, in connection with the purchase or sale of any security ...

any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 provides that,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Some courts have taken the position that the cause of action accrues and the statute of limitations begins to run on the date that the purchase or sale of the security occurred. *Hill v. Equitable Bank,* 655 F.Supp. 631, 638 (D.Del.1987), *aff'd.,* 851 F.2d 691 (3d Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989); *In re VMS Securities Litigation,* 752 F.Supp. 1373, 1388–89 (N.D.Ill.1990); *see also Nichols v. Merrill, Lynch, Pierce, Fenner & Smith,* 706 F.Supp. 1309, 1318–19 (M.D.Tenn.1989) (court looked to sale date to determine when statute of limitations borrowed from state statute began to run); *Barr v. McGraw–Hill,* 770 F.Supp. 855 (S.D.N.Y.1991) (plaintiff had three years from date of purchase to file claim). Other courts have found that the date of the alleged misrepresentations triggers the running of the statute of limitations. *See Klein v. Goetzmann,* 770 F.Supp. 78, 85 n. 8 (N.D.N.Y.1991) (court rejected plaintiffs' argument that claims of class members who made purchases within three years of

the date the complaint was filed were timely); *Bank of Denver v. Southeastern Capital Group, Inc.*, 770 F.Supp. 595, 596 (D.Colo.1991) (issuance of offering statement triggered running of the statute of limitations on claims that plaintiffs purchased bonds in reliance on misleading information contained in the statement); *Brumbaugh v. Princeton Partners*, 766 F.Supp. 497 (S.D.W.Va.1991) (period of limitations began to run on date of misrepresentations made in public filings).[9] This Court believes the better view to be that the statute of limitations for a § 10(b) and Rule 10b–5 claim runs from the date of the purchase or sale of the security. The violation is the use of a fraudulent device or the making of an untrue statement of material fact or the omission to state a material fact *in connection with the purchase of sale of any security.* Thus, a violation is not complete until a sale or purchase occurs.[10]

However, consistent with *Lampf,* the running of the statute of limitations should be triggered by the initial sale or purchase, even as to the claims of those who made purchases on the secondary market. Otherwise, a seller would remain liable for his conduct so long as the securities he sold stayed on the market. The practical result would be that the seller could be sued well beyond three years after he engaged in the questioned conduct. Such a result is inconsistent with the intention that the three-year period of limitations serve as an absolute cut-off.

■ Applying these principles to the case *sub judice,* the Court finds that the situation presented here requires a look beyond the date of the bond closings to determine when the statute of limitations began to run. The complaint alleges that the underwriter defendants made the initial bond purchases. The complaint further alleges that the underwriters were involved in the fraud giving rise to plaintiffs' claims. Accepting the allegations of the complaint as true, reliance on the fraud did not occur, and the fraud was not complete, until the underwriters sold the bonds to purchasers not involved in the alleged fraudulent scheme. Under this scenario, the sale of the bonds by the underwriters to the public should be considered the initial purchase or sale and the statute of limitations should begin to run from the dates the underwriters made these sales. On the other hand, if the underwriters were not involved in the fraud, their purchases should be considered the initial purchases that triggered the running of the statute of limitations. The question of whether or not the underwriters were involved in the fraud cannot be resolved on the pleadings. Therefore, the claims of those plaintiffs who purchased bonds from the underwriters within three years of the date the complaint was filed

**9.** In the case of *Ayers, et al. v. Sutliffe, et al.,* C–1–90–650, counsel for defendant argues that the statute of limitations began to run when the bonds were issued. In support of this proposition, counsel cites *Anixter v. Home–Stake Production Co.,* 939 F.2d 1420 (10th Cir.1991), a case involving an alleged continuing Ponzi scheme in which an Oklahoma corporation sold working interests in various program leaseholds. The Court of Appeals concluded that defendants' fraudulent concealment did not avoid the absolute three-year bar of the applicable period of limitations. Counsel relies on a portion of the legislative history quoted in *Anixter* to the effect that absent an absolute bar, individuals might be deterred from serving on boards of directors in light of the possibility of being subjected to lawsuits long after alleged wrongdoing occurred. There is no debating the fact that the three-year period of limitations must serve as an absolute bar. However, this fact sheds little light on the issue of when the three-year period begins to run. In fact, the

Court in *Anixter* suggested that the period is triggered by the purchase of a security. The Court found that as to plaintiffs' express causes of action under the federal securities law, without notice of the fraud, plaintiffs had only three years from the date they purchased interests in various program leaseholds in which to file suit. The court held plaintiffs' implied causes of action under § 10(b) and Rule 10b–5 were untimely based on its discussion of the applicability of the statute of limitations to plaintiff's express causes of action.

**10.** In *Lampf,* the Court determined that plaintiffs' claims filed more than three years after alleged misrepresentations made in offering memoranda for partnerships in which plaintiffs invested were time-barred. However, the Court did not need to address whether the statute of limitations begins to run from the date of purchase or the date of alleged misrepresentations since in that case both events occurred well over three years prior to the filing of the complaint.

will not be dismissed as time-barred. The claims of those plaintiffs who purchased bonds from the underwriters or other sellers more than three years prior to the filing of the complaint must be dismissed as untimely.

In so holding, the Court rejects plaintiffs' contention that the doctrine of fraudulent concealment tolls the running of the statute of limitations on the claims of those individuals who purchased bonds more than three years prior to the filing of the complaint. *Lampf* holds that tolling principles do not apply to the three-year limitation period. Fraudulent concealment is an equitable tolling doctrine. *See Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1465, 1466 (6th Cir.1982), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

The Court also rejects plaintiffs' apparent contention that the claims of those who purchased bonds more than three years prior to the filing of the complaint are not time-barred because defendants failed to correct the material misrepresentations made in connection with the various bond offerings before that three-year period. A rule that the statute of limitations does not begin to run so long as material omissions and misstatements remain uncorrected cannot be reconciled with *Lampf.* The Supreme Court has placed a three-year cap on the time for bringing a claim based on alleged fraud, regardless of when the claimant discovered the violation. If the statute of limitations were not to begin running so long as misstatements and omissions remain uncorrected, the possibility exists that a claimant could bring a claim based on alleged fraud well beyond three years after the conduct giving rise to the claim occurred. Such a result is totally inconsistent with the intention that the three-year period serve as a cut-off to which tolling principles do not apply. *Lampf,* 111 S.Ct. at 2782.

Finally, plaintiffs' contention that the doctrine of "continuing wrong", under which continuing unlawful acts of the defendant have the effect of tolling the period for commencement of an action, applies to this case is meritless. For the reasons stated above, this doctrine cannot delay commencement of the limitations period beyond the date the violations occurred.

### State Law Claims

■ Defendant contends that plaintiffs' state law claims are barred under various Ohio statutes of limitations. Defendant assumes that Ohio law applies to plaintiffs' claims while conceding that "the choice of law issue is far from clear". Plaintiffs' state law claims cannot be dismissed based on an assumption that the law of a particular state applies. Because defendant has not addressed the choice of law issue, defendant's motion to dismiss plaintiffs' state law claims is without merit. The Court chooses to exercise pendent jurisdiction over these claims.

### Conclusion

To conclude, the § 10(b) and Rule 10b–5 claims of all class members who purchased bonds prior to September 6, 1987 are barred by the lapse of time. With regard to bond issues that closed before September 6, 1987, the claim of any class member who purchased bonds after that date is barred unless the initial purchase or sale occurred within three years of the date the complaint was filed. For purposes of this opinion, the Court will consider a purchase from any of the underwriter defendants to be the initial purchase. A class member's claim is also barred if he or she discovered the facts constituting the violation before September 6, 1989. Plaintiffs who made initial bond purchases on or after September 6, 1987 may be able to establish that they did not discover the facts constituting defendants' alleged securities fraud violations until less than one year before filing this lawsuit. Accordingly, defendant's motion to dismiss the claims of these class members as time-barred is not well-taken.

It is hereby ORDERED that defendant Touche Ross' motion to dismiss is GRANTED with regard to the following: (1) the § 10(b) and Rule 10b–5 claims of all class members who purchased bonds from the underwriter defendants or other sellers pri-

or to September 6, 1987, and (2) the § 10(b) and Rule 10b–5 claims of class members who purchased bonds from sellers other than the underwriter defendants after September 6, 1987, except for the claims of class members who purchased bonds issued in connection with the Medicos Project. Defendants may renew at the time of trial their request to dismiss the claims of those class members who purchased bonds from the underwriter defendants after September 6, 1987, if defendant believes the evidence establishes that the underwriters were not involved in the alleged fraud. The motion is DENIED as to all other securities fraud claims, RICO claims, and state law claims.

IT IS SO ORDERED.